Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

Newport News Division

FILED

JUN – 5 2019

CLERK, US DISTRICT COURT
NORFOLK VA

Anthony L. Forbes

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

SeaWorld Entertainment INC and The Blackstone
Group L.P.

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  4:19- CV-56

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☒ Yes  ☐ No

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if
needed.

| | |
|---|---|
| Name | Anthony Lonnie Forbes |
| Street Address | 1337 Coral Pl |
| City and County | Hampton |
| State and Zip Code | Virginia 23669 |
| Telephone Number | (757)3760335 |
| E-mail Address | Law-order2006@hotmail.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an
individual, a government agency, an organization, or a corporation. For an individual defendant,
include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## Defendant No. 1

| | |
|---|---|
| Name | SeaWorld Entertainment INC |
| Job or Title *(if known)* | |
| Street Address | 9205 South Park Center Loop Suite 400 |
| City and County | Orlando |
| State and Zip Code | Florida 32819 |
| Telephone Number | (888)888-5447 |
| E-mail Address *(if known)* | |

## Defendant No. 2

| | |
|---|---|
| Name | The Blackstone Group L.P. |
| Job or Title *(if known)* | |
| Street Address | 345 Park Avenue |
| City and County | New York |
| State and Zip Code | New York 10154 |
| Telephone Number | (212) 583-5000 |
| E-mail Address *(if known)* | |

## Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

## Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Busch Gardens Willamsburg, VA |
| Street Address | 1 Busch Gardens Blvd |
| City and County | Williamsburg |
| State and Zip Code | Virginia 23185 |
| Telephone Number | (800)3437946 |

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒    Other federal law *(specify the federal law)*:

Civil Rights Act of 1866 (42 U.S.C. Section 1981). Retaliation and the right to give evidence

☐    Relevant state law *(specify, if known)*:

Virginia Human Rights Act § 2.2-3900. Short; declaration of policy

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☐    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☐    Unequal terms and conditions of my employment.

☒    Retaliation.

☐    Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

2/29/2016, 3/4/2016, 1/31/2017, 2/2/2017, 2/3/2017, 4/2017, 5/13/2017, 10/1/2017, 1/9/2018, 2/20/2018, 8/1/2018, 1/11/2019, 10/29/2019, 1/28/2019, 1/29/2019, 3/1/2019

C.    I believe that defendant(s) *(check one)*:

☒    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race            racial slurs, hate crimes, assault

☒    color           racial slurs, hate crimes, assault

☒    gender/sex      Title VII sex based harassment

☐    religion        _____

☐    national origin _____

☐    age *(year of birth)* _____    *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

E.    The facts of my case are as follows. Attach additional pages if needed.

After purchasing a BMW in September 2014, the Plaintiff, a Facility supervisor with Busch Gardens Williamsburg at the time was inappropriately hit on by a female assistant manager. The assistant manager made countless attempts to seduce the Plaintiff with sexual advances. The Plaintiff was also hit on by another female supervisor. After showing no interest in either assistant manager, the Plaintiff found that he was in a hostile work environment. Wanting only to make the sexual harassment stop, the Plaintiff contacted a manager and explained what was going on. At one point the assistant manager sexually harassed the Plaintiff in front of the Manager. As a result of the unwanted sexual advances not being appropriately handled, bigger issues took place essentially, a snowball effect was formed. The Plaintiff wrote up an employee that left and abandoned their shift at least 3 times to play in the park while on the clock. After the employee was fired, the manager gave the same assistant managers that made sexual advances towards the Plaintiff an order to write the Plaintiff up in retaliation. The Plaintiff went to human resources, where he met Angie Minter to make a complaint about the unfair treatment. After explaining the retaliation, the write up from the assistant managers disappeared however, harassment got worse and misconduct started deliberately be done in stealthy ways that could be covered up. Inappropriate racial comments and jokes where made in front of the Plaintiff. Comments such as "I thought all black people had big lips" where made. It was the Plaintiff's belief that management was trying to make the Plaintiff quit using a technique of natural attrition. On June 3rd 2015 the Plaintiff reported sexual harassment and other discrimination to Angie Minter in human resources. Angie gave Jackie, who was also a part of the discrimination complaint, the order to investigate. One of the two assistant managers that made sexual advances towards the Plaintiff was given an altered schedule for a few days as to not make contact with the Plaintiff while the investigation was taking place. On the night of

June 5th 2015 right before closing, the other assistant manager followed the Plaintiff into a freezer and cornered him and threatened him with rape in a way as to say stop with the complaints or else. When the Plaintiff went to work the next day on June 6th 2015, human resources was conveniently not open. With no other choice, the Plaintiff was forced to report to work in order to not receive any disciplinary action. The Plaintiff's Manager immediately increased monitoring on the Plaintiff and would not let him out of her sight. The Manager entered the Plaintiff's work area and started doing the Plaintiff's work, not normal, in an intimidating manner, questioning his every move, such as why he left the area to get an item needed for the job or going to the bathroom. The Plaintiff noticed another supervisor across the room that had been watching the whole time, start laughing and pulled out a cell phone to start recording. The Plaintiff sensed danger and notified another assistant manager about what was going on and reported to security to make a report. The Plaintiff made contact with the head of security at the time who in return contacted Angie Minter. The Plaintiff told Angie what happened and was threatened to be fired than transferred to a different location in the park.

The Plaintiff was transferred to an unwelcoming environment and isolated working with only a handful of people; rumors were spread about the Plaintiff throughout the park and for the most part at the time, the offenders went unpunished. The incident was made to look like the Plaintiff was the problem. On a everyday basis the Culinary President would come into the Plaintiff's isolated work area and give intimidating looks. One of the Plaintiff's new assistant managers dropped the N-word and made other racial comments towards the Plaintiff and others. On July 4th 2015 the Culinary President struck the Plaintiff and his supervisor while in an office talking. The Assault & Battery was reported to Angie in Human Resources by multiple sources, where it was covered up and nothing was done. After waiting months for action with none

taken, the Plaintiff wrote a letter the Park President (Carl Lum) Exhibit 1 dated October 22nd 2015 to which he outlined most of the major issues that had taken place. The Plaintiff exclusively compared himself to a slave and mentioned that everything was being covered up. The Park President did not respond to the Plaintiff in written form instead, the Park President did not respond to the Plaintiff until the Plaintiff spotted him inside the park over a week later while coming into work and went up to talk to him. The Park President stated that the allegations were very serious and asked if John Harris had contacted me? When I stated no, John had not contacted me, the Park President stated that John Harris the Park Human Resources President would contact me. Soon after my complaint to the Park President the Culinary President came up to me and threatened to do something to my car "that's a nice car, it would be a shame if something happened to it." The Culinary President later came next to the Plaintiff in his isolated work area threw/ slammed a table next to the Plaintiff after stating how heavy the table was. On November 4th 2015 roughly two weeks after talking to the Park President and nothing being done, the Plaintiff wrote a letter to the corporate headquarters addressed to the CEO at the time Joel Manby Exhibit 2. The Plaintiff once again explained everything that happened. On November 23rd 2015 John Harris mailed the Plaintiff a letter stating the investigation results showed that nothing happened or was found Exhibit 3. However, I was contacted by high ranking officials Melissa Hargis (Sr. Director, Human Resources and Kathleen Liever a Lawyer by phone and a meeting was set up Exhibit 4. The Plaintiff met with the high ranking officials and an investigation was started. On January 5th 2016 the Sr. Director, Human Resources called the Plaintiff and said "For lack of better words it looks like they did it" and another meeting was scheduled for January 8th 2016 Exhibit 5. In the meeting, the Sr. Director, Human Resources verbally explained that they had found evidence that the Plaintiff was sexually harassed, the

assistant manager had been in the freezer cornering me and the Culinary President had inappropriately put his hands on the plaintiff but there was no retaliation. The high ranking officials refused to give the investigation findings to the Plaintiff in writing. The Plaintiff was then asked what he wanted and it was suggested he take money and leave the company, another cover up. The plaintiff asked for time to think about what had been said to him. In addition, the Plaintiff did not have legal representation at the time and honestly felt that he was being taken advantage of, not to mention the laws that were broken. During the next series of weeks there were several transfers with people involved to include the Park President who went to another park. On January 29th 2016 the Plaintiff was contacted by e-mail from the Sr. Director, Human Resources asking for possible resolutions now that the investigation was complete and to set up a meeting, the Plaintiff did not respond to the Sr. Director, Human Resources's e-mail at that time Exhibit 6. On February 29th 2016 the Plaintiff went to human resources to see if he could get the investigation findings in writing and was laughed at. The Plaintiff went to the police station to file a report after being laughed at, when the Plaintiff got to the police station, it was after hours and had to contact dispatch for support. The police officer took quite a while to get there as so, more people conveniently showed up for help. When the police officer (Roger Langwell) did get there, he walked past the Plaintiff and start talking to other people that needed help, ignoring the fact that I was original call for service. It was at that time that the Sr. Director, Human Resources called the Plaintiff by cell phone right before talking to the police Exhibit 7. The Sr. Director, Human Resources stated "remember you were suppose to get back with me and tell me what you wanted, I had not said a word to the Sr. Director, Human Resources in nearly 2 months, now that the Plaintiff was at the police station he was contacted. The Plaintiff believed that this was witness tampering/ bribing a witness and obstruction of justice or at least an attempt. The

Plaintiff told the Sr. Director, Human Resources that he would have to get back to her. The police officer refused to do a police report at first stating that the Plaintiff needed a witness. The Sr. Director, Human Resources followed up her phone call with an e-mail about 42 minutes later confirming that she had been trying to offer the Plaintiff something of value Exhibit 6. The Plaintiff later responded to the Sr. Director, Human Resources's e-mail twice asking for the results of the investigation and never got a response Exhibit 8. On March 1st 2016 the Plaintiff went back to the police station with a witness and both he and the Plaintiff gave statements about assault and battery to another police officer (J.A. Ernst) Badge number 101 who said that he would give the statements to officer Langwell. Officer Langwell called the Plaintiff and stated that the other witness had said only that he didn't feel assaulted the police refused to give the Plaintiff a copy of the witness statements after the report was done Exhibit 9 so that he could verify what the officer was saying. The officer refused to look into the fact that the Plaintiff had been called and e-mailed right before and during speaking to him and refused to take the evidence after being told. Prosecution, declined, magistrate refused to issue warrants no probable cause, based off of incomplete information. After the witness statements were given, the Plaintiff was fired for stating that he would go to the authorities (Federal) to the Sr. Director, Human Resources. The Plaintiff elected to skip going to the state police because believe it or not there was an issue that involved a cover up with them previously. Actually, the Plaintiff was fired while heading to the FBI right before arriving to the station on March 6th 2016. The Plaintiff was suspended from all parks on March 9th 2016 Exhibit 10. After doing a quick background check on officer Langwell, the Plaintiff found that he was a former SeaWorld employee with a high ranking position. SeaWorld is the parent company of Busch Gardens Williamsburg. It is the

Plaintiff's notion that officer Langwell was purposely placed at the police department to act as a gatekeeper in regards to issues dealing with Busch Gardens Williamsburg.

Due to time constraints, the Plaintiff had to file a charge of discrimination with the EEOC without resolving the issue with the police report. On June 23, 2016 the Plaintiff filed a charge. The EEOC issued a right to sue letter on August 24, 2016 and the Plaintiff filed a lawsuit on November 23, 2016 Exhibit 11. On December 13th 2016, SeaWorld announced a new partnership with Miral to bring SeaWorld Abu Dhabi to Yas Island. Abu Dhabi is the capital of the United Arab Emirates and is located next to Saudi Arabia. Later, Saudi Arabia would pledge $20 Billion to the Blackstone Groups record infrastructure fund, The Trump administration revealed a 2018 budget proposal, that would include a $1 trillion infrastructure plan. The Plaintiff wrote a letter to Stephen A. Schwarzman the Chairman and CEO at the time of The Blackstone Group L. P. dated January 12th 2017 Exhibit 12. The letter was based on the fact that The Blackstone Group L.P. Owned the largest stake in SeaWorld at the time. In the letter, the Plaintiff asked the CEO Stephen A. Schwarzman to take a look at the Complaint that was filed by the Plaintiff and asked if he was okay with Discrimination. Mr. Schwarzman did not respond to the letter. A brief background check on Stephen A. Schwarzman revealed several alarming red flags. Stephen A. Schwarzman has been good friends with Donald J. Trump for years. The Blackstone Group L.P. has been a significant force in Jared Kushner's family real estate deals and Stephen A. Schwarzman also has ties with Vladimir Putin and the Kremlin. Mr. Kushner and Ms. Trump have invested in a fund that was managed by The Blackstone Group L.P. and the list goes on.

About a week later, the Plaintiff wrote a letter to David F. D'Alessandro, SeaWorld's then Chairman, that was dated January 19th 2017 Exhibit 13. The letter asked Mr. D'Alessandro

to take a look into the Complaint that was filed by the Plaintiff and asked if he was okay with Discrimination. Mr. D'Alessandro did not respond to the Plaintiff's letter. Once again, a quick review of Mr. D'Alessandro's background revealed alarming information. Mr. D'Alessandro is a board member of Blackstone companies, Vivint and Vivint Solar Exhibit 90.

SeaWorld hired the OGLETREE DEAKINS law firm to represent them in the Plaintiff's Complaint. Jimmy F. Robinson was the attorney that represented SeaWorld. Mr. Robinson sent the Plaintiff a cease and desist letter dated January 31, 2017. The Plaintiff received the letter on February 1st 2017 by FedEx, The cease and desist letter was a response to the Plaintiff's letter that he wrote to David F. D'Alessandro on January 19th 2017 Exhibit 14. Next, Mr. Robinson called the Plaintiff on the next day after he received the letter that was sent. Mr. Robinson introduced himself as an attorney for SeaWorld and stated that Kathleen Liever had hired him to represent the company. Mr. Robinson then verbally stated that the Plaintiff had to drop his lawsuit and use SeaWorld's DRP (Dispute Resolution Program Policy). SeaWorld and Mr. Robinson completely ignored the Plaintiff's attorney's letter that was sent out Sept 28th 2016 which was a demand for Settlement Negotiations Exhibit 15 and contacted the Plaintiff. When the Plaintiff told Mr. Robinson that he would be seeking advice from counsel, Mr. Robinson became irate and replied "if you don't drop your lawsuit bad things are going to happen". In another bullying tactic, Mr. Robinson e-mailed the Plaintiff and a consent motion that would allow the case to be dismissed and sent to the DRP process. The Plaintiff responded once again by saying that he was currently seeking counsel for advice Exhibit 16. Mr. Robinson subsequently sent another cease and desist letter that was dated February 2nd 2017 Exhibit 17. The cease and desist letter was received by the Plaintiff on February 3rd 2017 by FedEx and addressed the Plaintiff letter that was sent to Stephen A. Schwarzman on January 12th 2017. The

cease and desist letters that were sent by MR. Robinson by FedEx 1 day delivery, the phone call and the e-mail were meant to be a distraction, to harass, to intimidate and to deter the Plaintiff from filing/mail/e-mailing a motion in Virginia Beach Circuit Court Civil Action No.: CL16-4546 which would have been due on February 3rd 2017. Fittingly, Stephen A. Schwarzman met with Donald J. Trump abroad Air Force One on February 3rd 2017 where they talked about infrastructure, China and immigration. Also Stephen A. Schwarzman was on Donald J. Trumps Strategic and Policy Forum. A few days later, the Plaintiff had his attorney sent out a follow-up letter to the first letter that was sent out on September 28th 2016. The Plaintiff's follow-up letter was dated February 6, 2017 Exhibit 18. A quick background check on Kathleen Liever revealed that she was a former associate at OGLETREE DEAKINS law firm. It also appears as if Ms. Liever left SeaWorld as soon as the Plaintiff filed the newest charge with the EEOC Exhibit 19. The Plaintiffs background check also revealed that Ms. Liever had stock in SeaWorld Exhibit 20. A quick background check on Mr. Robinson showed that he was a member of the Alpha Phi Alpha Fraternity Exhibit 21. This Fraternity has members in every field that can be imagined to include government. Mr. Robinson could use his Fraternity to stalk and harass the Plaintiff and indeed he did. Posing as a friendly attorney that was just trying to help, Mr. Robinson collected all kinds of information on the Plaintiff. While it is not the Plaintiff's intention to imply that every member of the Fraternity stalked and harassed the Plaintiff, there is evidence that a few of them did. Therefore, it is hard to separate any member from the ones that displayed poor behavior. Mr. Robinson Filed a Motion to Dismiss and Compel Arbitration Exhibit 22. Number 1 of the motion, in the last sentence, the defendant denied all of the Plaintiff's claims and denied that the Defendant was liable for any reason. Number 2 and 3 of the same Motion showed that the Defendant claimed that all of the Plaintiff's claims arise from and relate to his former

employment relationship with the Defendant and that the Plaintiff entered into a valid and enforceable agreement to use DRP for all claims relating to or arising out of the Plaintiff's employment with the Defendant. However, the Plaintiff would later find out that the Defendant's Motion was deceitful and intentionally mislead the Court. In Addition, evidence was withheld in a manner that allowed the Defendant to disrupt the judicial machinery of the court. Mr. Robinson also filed a Memorandum in Support of Defendant's Motion to Dismiss and Compel Arbitration Exhibit 23.

The Plaintiff received various threats and was constantly harassed. An example of the the harassment that was displayed towards the Plaintiff can be seen on Exhibit 24. While in school, one of the Plaintiff's classmates made a post claiming to work for Ogletree Deakins as an Affirmative Action Data Analyst for Ogletree Deakins Law firm.  The Post appeared to be racially themed form of harassment.  The students name appeared to be Sandra Graham and was from South Carolina just as Senator Graham is.  The Plaintiff believed that this was the first but not the last time that he was used as a political tool.  This harassment was documented on May 1st 2017. However, the post took place well before May 1st 2017 but in the spring of 2017 which prompted the Plaintiff to write a Cease and Desist Letter to Mr. Robinson and Mrs. Lester Exhibit 25.  Donald Trump would later be recorded as saying "Not at Liberty" and was seen with Jerry Falwell Jr. Exhibit 26 and giving a commencement address on May 13th 2017 Exhibit 27. The Plaintiff's concern with SeaWorld, Ogletree Deakins, Mr. Robinson, Donald Trump and Liberty University can be seen in the Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and Compel Arbitration Number 4 Exhibit 28.

The Plaintiff filed three Motions for issuances of a Subpoena Duces Tecum.  The first Motion was directed at John Harris for a complete Police report, to include any and all witness

statements given Exhibit 29. The next Motion was directed towards the James City Police Department for a full and complete police report, to include any and all witness statements given in relation to Case# 16000629 Exhibit 30. The Last Motion was directed towards John Harris for Any and all documents in relation to investigations conducted by Angie Minter, John Harris, Melissa Hargis and Kathleen Liever in reference to the Plaintiff's Complaint Exhibit 31.

Mr. Robinson filed a Defendant's Memorandum in Opposition to Plaintiff's Motions for Issuance of Subpoenas Exhibit 32. The Judge Granted the Defendants's Motion Dismiss and Compel Arbitration and Dismissed the Plaintiff's three Motions for Subpoena as moot based off of unknown information that was intentionally suppressed by the Defendant in a Memorandum Dismissal Order Exhibit 33. Only after the Plaintiff's Complaint was Dismissed, did the Police give the Plaintiff a full copy of the Police report. The Plaintiff received three witness statements Exhibit 34, Exhibit 35 and Exhibit 36. Exhibit 34 is the Plaintiff's statement that was given to the James City County Police on March 1st 2016. The Plaintiff's statement shows that police report is inaccurate in saying that the Plaintiff's says that Mr. Kintenko "stuck and shook us both" the Plaintiff's statement actually states that "Franz Kintenko came up and assaulted us both" the misuse of words imply that Plaintiff and his witness, Marco Leslie were only frightened or startled by Mr. Kintenko. The Plaintiff's statement also reflects that Plaintiff stated that Franz struck and jerked the Plaintiff and Marco Leslie. Exhibit 35 is Marco Leslie statement. Marco Leslie statement also differs from what is in the police report. The police report reflects that Mr. Leslie's statement says that although he was startled that "I did not feel assaulted and was not bothered by the act. In actually the Mr. Leslie's statement says I was patted on the shoulder by the VP", "It did not bother me much other then startling me because it caught me by surprise" "a couple of months later I was asked to write a witness statement about the event I was not sure

what was going on", "I was called in again and was asked the same questions but spoke verbally", "This is a statement that Anthony Forbes was patted on the shoulder" "This act did happen, being patted on the shoulder, to Anthony and myself". Exhibit 36 is a previously unknown statement that was given by Kathleen Liever on March 4th 2016  Ms. Liever's statement states "an incident occurred between Mr. Forbes and Mr. Kintenko sometime in July", the corporate office from Orlando conducted their own investigation after Mr. Forbes stated that the local investigation conducted by Busch Gardens in Williamsburg wasn't impartial.", "both investigations resulted in evidence not sufficient and unfounded." However, Mr. Leslie statement says that he wrote a statement and verbally told the investigators that the incident took place.  In addition, the Plaintiff gave a statement and verbally told the investigators that the incident happened.  Naturally the investigators would have asked Franz Kintenko if the incident happened during the investigation. Again, the high ranking figures told the Plaintiff that there was evidence of what he claimed in a meeting and over the phone.

On May 8th 2017, the Plaintiff bought a timeshare vacation from Bluegreen getaways. The Location was Las Vegas Nevada Exhibit 37, 38, and 39.  Later, the Plaintiff would find that Mr. Robinson would use this information threaten the Plaintiff, it is also what the Plaintiff meant when he said that Mr. Robinson was stalking and harassing him. On June 30th 2017 the Plaintiff filed a lawsuit against Mr. Kintenko in the James City County for his previous action of assault on the Plaintiff Exhibit 40. The Plaintiff was given a date of August 7th 2017 for the Plaintiff and the Defendant Mr. Kintenko to appear before the court.  On August 7th 2017 an Attorney from Ogletree Deakins by the name of Reilly C. Moore, appeared as counsel for Mr. Kintenko Exhibit 41. Mr. Moore specifically choose the Court date of October 2nd 2017, the day after the October 1st 2017 Las Vegas Shooting by Stephen Paddock to return to court after the Judge ordered

pleadings. After filing the lawsuit, a gentleman that appeared to be Stephen Paddock came to the Plaintiff's house and parked his vehicle, a white firebird in between a neighbor's and the Plaintiff'a house. As the Plaintiff came home and drove into the driveway, the gentleman that appeared to be Stephen Paddock drove off. At the time, the Plaintiff didn't think much of the incident but remembered the face and the car. Fast forwarding to the week of the shooting, the Plaintiff received multiple calls from the Bluegreen company up into the day after the shooting October 2nd 2017 and the day that the Plaintiff was to make an appearance in court. The Plaintiff also received two E-mails from the Bluegreen Company before the 2:30pm court appearance Exhibits 42 and 43. It was alleged that Stephen Paddock shot the people in Las Vegas and then turned the gun on himself Exhibit 44. When the shooting took place in Las Vegas, Jason Aldean was performing on stage Exhibit 45. In Exhibit 45 you will notice that Jason Aldean is wearing a black and gold shirt that says O'BRADY'S BAR. The black and gold colors are the same colors of the same Fraternity that Mr. Robinson is in Alpha Phi Alpha INC Exhibit 45. In addition to the black and gold shirt that Jason Aldean was wearing, a black and gold evidence tracker was placed at the scene of the alleged shooting in the hotel room of Stephen Paddock. The evidence tracker had the number 19 on it Exhibit 46. The 19 was based off of a book that the Plaintiff was read and had posted on social media as one of his favorite books, The 48 laws of power by Robert Greene Exhibit 47. The Plaintiff recognized immediately that the black and gold 19 was a threat from Mr. Robinson who had already threatened the Plaintiff. Law 19 of the book states "Know`who you're dealing with—do not offend the wrong person" Exhibit 48. The Plaintiff previously had an issue with the Virginia State Police where evidence was planted on him and was working on the case prior to the event and kept getting blocked in one way or another. On October 1st right before the shooting, O.J Simpson was released from prison from

the Nevada Department of Corrections prison Exhibit 49. A glove was placed on Stephen Paddock's left hand while he laid dead Exhibit 50. The glove being put on Stephen Paddock's hand was done so in a way to mimic O.J. Simpson case Exhibit 51. This incident was also done to provoke a rival Fraternity Kappa Alpha Psi INC, in which the Plaintiff had had an interest in previously but never joined. O.J. Simpson's Lawyer, Johnnie Cochran, was a member of the Kappa Alpha Psi INC Fraternity Donald J. Trump would also often provoke the Kappa Alpha Psi INC Fraternity Exhibit 27 by way of Mr. Robinson an Alpha Phi Alpha INC member. After the Las Vegas shooting, the news and other media sources all ran a picture of Stephen Paddock with eyes closed and a bluegreen light above his head Exhibit 52. Mr. Robinson changed his profile picture to reflect himself wearing a Blue and green Bowtie Exhibit 53. It was very clear that Mr. Robinson was threatening the Plaintiff. Because the Plaintiff had an appearance in court on October 2nd 2017 in James City County, it appears as if Mr. Robinson and Mr. Moore may have committed crimes at this point. However, the horrendous behavior continued. On October 6th 2017 Donald J Trump winked his eye Exhibit 54 when asked about his comment "were in the calm before the storm." The Plaintiff had previously stated the calm before the storm on his Facebook page long before. The next day, On October 7th 2017 just days after the shooting, Jason Aldean went on to Saturday Night Live with a tribute to the Las Vegas Victims. Jason Aldean sung Tom Petty's "I won't back down" and near the end of the song Jason Aldean winked his eye. The Plaintiff immediately noticed that an app called Mario Run was changed to reflect Mario winking Exhibit 55, 56, 57 and 58. After the Las Vegas Shooting, in November 2017 at the Asia-Pacific summit, Donald Trump and Vladimir Putin purposely put on oversized blue traditional-styled Vietnamese shits and stood next to a lady wearing a green dress with a hint of pink Exhibit 59. Green and Pink are the Colors of the Alpha Kappa Alphas the sister

Sorority of the Alpha Phi Alpha. The Plaintiff's sister-in-law would later be tricked into wearing blue and green clothing and holding up the Alpha Phi Alpha call sign Exhibit 60.

On December 11th 2017, the Plaintiff filed a lawsuit against Reilly C. Moore for his inappropriate actions Exhibit 61. The Plaintiff was given a return court date of January 9th 2018 Exhibit 61. On January 9th 2018, Mr. Robinson showed up to represent Mr. Moore. Right before court, Mr. Robinson tried to get the Plaintiff to Dismiss the case, when the Plaintiff refused to do so, Mr. Robinson took of his coat and revealed that he was wearing a royal blue suit with a green handkerchief. When Mr. Robinson revealed his royal blue suit another attorney with the last name of Atlee showed up. Mr. Robinson then stated I guess I'm next. Mr. Robinson's blue suit with a green handkerchief implied that he was going to shoot the Plaintiff in the head just like Stephen Paddock. When Mr. Robinson stated I guess I'm next he was quoting the Plaintiff. The Plaintiff is a DJ. At one of the Plaintiff's events, he happened to be the only single male in the building and by default, he got the garter belt. The Plaintiff would later post on his Instagram account a picture of the garter Exhibit 62 and the following statement "It's crazy when the DJ is the only one that is single in the room and gets the garter by default. I guess I'm next!" Exhibit 63. The Plaintiff did have a friend that went by the name Lee. Therefore, the Plaintiff was alarmed when Mr. Robinson and the other lawyer Mr. Atlee teamed up to imply that they were going to shoot the Plaintiff's friend in the head. The Judge ordered pleading and Mr. Robinson became irate once again threatened the Plaintiff and stated that Plaintiff had until the end of the week to drop the lawsuit. The Judge set the original return date for April 12th 2018 at 10:30 a.m. and the Plaintiff filed his Bill of Particulars which implicated Mr. Robinson in a crime for wearing the blue suit and green handkerchief and other things Exhibit 64. Instead of responding to the Plaintiffs Bill of Particulars, Mr. Robinson filed a Demurrer Exhibit 65 and had the case

dismissed on February 20th. Due to the fact that Mr. Robinson had threatened the Plaintiff and his friend, the Plaintiff opted to go to the FBI and update them on what had taken place. Mr. Robinson's Motion was untimely and once the Plaintiff went to the FBI a person wearing blue and green followed him into a library not more than 2 hours later. The Plaintiff wrote Mr. Moore an e-mail trying to confirm that his bill of particulars was received. The Plaintiff also explained that he was only aware of the trial date of April 12th 2018 and that the grounds of defense were due on the February 20th day Exhibit 66. Mr. Robinson replied back to the Plaintiff's e-mail stating that the Judge offered to entertain his Demurrer before the trial date. The plaintiff had no knowledge of this statement Exhibit 67. The Plaintiff filed an appeal on February 26th 2018 a trial date was set for a date in 2019. On April 28th 2018 the Plaintiff sent Kathleen Liever a Cease and Desist letter Exhibit 68 due to the fact that she had hired Mr. Robinson and the Donald J. Trump was constantly harassing the Plaintiff. Mr. Robinson filed the same Demurrer on September 27th 2018 Exhibit 69 a day after Plaintiff left for vacation Exhibit 70. Mr. Robinson was once again exhibiting stalking like elements, and trying to keep himself from being implemented. The Plaintiff responded to Mr. Robinson's Demurrer Exhibit 71 stating that Mr. Robinson had threatened to shoot him in the head. However, on October 17th 2018 the demurrer granted. The Plaintiff filed for a protective order on Reilly C. Moore. On August 1st 2018 there was a hearing Exhibit 72. The Plaintiff subpoenaed Franz Kitenko as a witness and was able to get him to finally admit under oath that he had put his hands on the Plaintiff Exhibit 73. It appears as if Mr. Moore left the Ogletree Deakins Firm in August after the Plaintiff got a statement from Mr. Kitenko Exhibit 74 and 75. Mr. Robinson threatened me and others by wearing a blue and green suit which was related to the Las Vegas shooting. Before the Plaintiff could sue Mr. Robinson He obstructed justice by getting an order keeping the Plaintiff form

filing a lawsuit Exhibit 76.  In a hearing for a protective over the Plaintiff was able to get the Vice President to admit that he had put his hands on him.  Mr. Robinson than got an order preventing the Plaintiff from calling the vice president as a witness again Exhibit 77.  Mr. Robinson did this to keep the Plaintiff from asking the vice president if he had told Melissa Hargis and Kathleen Liever if he had put his hands on the Plaintiff on record once again Mr. Robinson obstructed justice.

 The Plaintiff filed a protective order on Franz Kitenko CL18001348-00. The Plaintif sent Mr. Robinson a set of interrogatories Exhibit 78. Mr. Robinson stated in an e-mail that he sent the responses Exhibit 79 however, the Plaintiff never got them.  The Plaintiff next sent a request for production of documents Exhibit 80.  Mr. Siegner from the Ogletree Deakins firm sent the Plaintiff a letter stating that the Plaintiff's request wasn't warranted Exhibit 81.  The Plaintiff responded to Mr. Siegner with a letter Exhibit 82. The Plaintiff sent Stephen A. Schwarzman on last letter on January 23, 2019 to which he did not get a response to Exhibit 83. The Plaintif believes that the harassment is still going on Exhibit 84, 85, 86,87, 88 and 89.

On October 24th 2018 an attorney from Zwerdling, Oppleman & Adams filed a Garnishment against the Plaintiff for a debt that was ten years old, which raised a red flag.  The attorney, Charles E. Adams, got a return date of November 27, 2018 Exhibit 93. The November date correlated with the Mississippi Senate race between Cindy Hyde-Smith and Mike Espy.  Cindy Hyde smith made comments about public hanging. Nooses were hung at the Mississippi Capitol. The frivolous lawsuit was obviously meant to threaten and harass the Plaintiff.  The Plaintiff sent the attorney a cease and desist letter Exhibit 89. The Plaintiff is and was at the time, a graduate student at George Mason University where his major was Public Administration on February 24th 2019 Lt. Governor Justin Fairfax, who is a member of the Alpha Phi Alpha INC gave a speech

that was directed towards the Plaintiff. The Lt. said he was going through a Lynching, he talked about wrongs that had happened in the past, referring to a cover-up with the Virginia State Police that took place against the Plaintiff. Next he talked about slaves in Hampton, VA, the city in which the Plaintiff lives in. Justin Fairfax next stated that if we go backward in a rush to judgment, if we eliminate due process "if we allow for a political lynching without any due process, any facts any evidence heard, than I think we do a disservice to this very body we all serve, I trust in my God this is much bigger than me." The plaintiff saw the words as a threat and wrote the Lt. Governor a cease and desist letter Exhibit 88. The Plaintiff is constantly threatened. For example, the Plaintiff went to Subway on January 28th 2018 Exhibit 86. The next day is when the alleged Jussie Smollett attack occurred after he left a Subway and nooses hung on his neck obviously correlating to the threat relayed by the attorney Charles E. Adams, Justin Fairfax and Cindy Hyde-Smith.

Also, Senator Kamala Harris sent threats toward the Plaintiff. In response, the Plaintiff sent Senator Harris a cease and desist letter Exhibit 84. After the Plaintiff mailed a charge to the EEOC on January 26th 2019 on SeaWorld Senator Harris made the Jussie Smollett comment about modern day lynching Exhibit 85 on January 29th 2019 and posted threatening pictures on Instagram Exhibit 94 and 95. Kamala Harris's action caused the Plaintiff to send a cease and desist letter Exhibit 84 and file for a protection order Exhibit 96 followed by a set off interrogatories Exhibit 87.

1. Illegal activities fall outside of the scope of employment and shall be excluded from DRP Exhibit 92. On February 29th 2016 the Defendant obstructed justice by interfering with

evidence and a witness by contacting the Plaintiff while trying to file a lawful police report and talk to the police about a crime. Furthermore, the Defendant used a former employee to interfere with the police report and investigation Exhibit 91. The Defendants actions kept the Plaintiff from giving evidence to the EEOC and in the Plaintiff's prior case 4:16cv172 Exhibit 11. Before being assaulted members of the Plaintiff's management used racial slurs, offensive or derogatory remarks "I thought all Black people had big lips" and used the N-word. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (intentional racial discrimination) (Give evidence in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

2. On March 4th 2016 after being told by the Plaintiff, the Plaintiff's witness and supervisor that the Plaintiff had been assaulted Exhibit 35, the Defendant gave a false statement to the police Exhibit 36 as to hinder the police report and discredit the Plaintiff the Defendant also conducted an investigation and told the Plaintiff that evidence had been found that Plaintiff had been harassed and assaulted. The Defendants actions kept the Plaintiff from giving evidence to the EEOC and in the Plaintiff's prior case 4:16cv172 Exhibit 11. Illegal activities fall outside of the scope of employment and shall be excluded from DRP Exhibit 92. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).

(Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (intentional racial discrimination) (Give evidence in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

3. The Plaintiff wrote a letter to the Defendant dated January 12th 2017 Exhibit 12. The Plaintiff's letter specifically brought up the racial discrimination that he had endured and asked the Defendant to take a look into it. The letter also stated "I whole, when you help those that do wrong you become part of the problem." The Defendant's response to the Plaintiff's letter was to have the attorney that was involved in the Plaintiff's Complaint send a baseless Cease and Desist letter Exhibit 17 on February 2nd 2017, as if the Plaintiff did not have rights such as freedom of speech. The letter seemed to only be concerned with Stephen A. Schwarzman of The Blackstone Group L.P An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

4. The Plaintiff wrote a letter to the Defendant dated January 19th 2017 Exhibit 13. The Plaintiff's letter specifically brought up the racial discrimination that he had endured and asked the Defendant to take a look into it. The Defendant's response to the Plaintiff's letter was to have the attorney that was involved in the Plaintiff's Complaint send a baseless Cease and Desist letter Exhibit 14 on January 31st 2017, as if the Plaintiff did not have rights such as freedom of speech. The letter seemed to mainly focus David D'Alessandro, who also holds positions in two Blackstone owned companies, Vivint and Vivint Solar Exhibit 90. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

5. One February 2nd 2017, the Defendant on contacted the Plaintiff by phone and stated "If you don't drop your lawsuit, bad things are going to happen." An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

6. The Defendant ignored the Plaintiff's letter from his attorney Exhibit 15 and contacted the Plaintiff directly who was not an attorney. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). The Plaintiff's attorney was well qualified to handle the dispute without litigation instead, the Defendant attempted to make the Plaintiff drop his Complaint. (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

7. The Plaintiff received various threats and was constantly harassed. An example of the the harassment that was displayed towards the Plaintiff can be seen on Exhibit 24. While in school, one of the Plaintiff's classmates made a post claiming to work for Ogletree Deakins as an Affirmative Action Data Analyst for Ogletree Deakins Law firm. The Post appeared to be racially themed form of harassment. The students name appeared to be Sandra Graham and was from South Carolina just as Senator Graham is. The Plaintiff believed that this was the first but not the last time that he was used as a political tool. This harassment was documented on May 1st 2017. However, the post took place well before May 1st 2017 but in the spring of 2017 which prompted the Plaintiff to write a Cease and Desist Letter to Mr. Robinson and Mrs. Lester Exhibit 25. Donald Trump

would later be recorded as saying "Not at Liberty" and was seen with Jerry Falwell Jr. Exhibit 26 and giving a commencement address on May 13th 2017 Exhibit 27. The Plaintiff's concern with SeaWorld, Ogletree Deakins, Mr. Robinson, Donald Trump and Liberty University can be seen in the Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and Compel Arbitration Number 4 Exhibit 28. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

8. On October 1st 2017 the Defendant threatened to shoot the Plaintiff in the head, used O.J. Simpson as a prop to racially harass the Plaintiff, intimidated the Plaintiff who was to appear in court against the Defendant the next day, stalked and harassed the Plaintiff. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

9.  On January 9th 2018 the Defendant threatened to shoot the Plaintiff and a friend in the head. An employee may file a Section 1981 within four years of the violation.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Give evidence in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

10. On February 20th 2018, the Defendant got an order based off of threatening to shoot the Plaintiff and his friend in the head that stated the Plaintiff could not file anymore lawsuits against the Defendant. An employee may file a Section 1981 within four years of the violation.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Give evidence in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

11. On August 1ˢᵗ 2018, the Defendant got an order from the court to stop the Plaintiff subpoenaing the Defendant as a witness. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Give evidence in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

12. On October 29ᵗʰ 2018 the Defendant wrote the Plaintiff a letter stating that his request for a production of documents wasn't warranted after the Defendant had already said that they had sent the documents. An employee may file a Section 1981 within four years of the violation. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). (Discrimination and Harassment in Violation of Section 1981) (Retaliation in Violation of Section 1981) (Give evidence in Violation of Section 1981) (Retaliation in Violation Virginia Human Rights Act) (Discrimination and Harassment in Violation of Virginia Human Rights Act) (Title VII, 42 U.S.C. § 2000e-3(a) )

**First Claim of Relief**

**(Discrimination and Harassment in Violation of Section 1981)**

13. Plaintiff herby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs and statements as if fully set forth herein.

14. Defendants have discriminated against Plaintiff on the basis of his race, and/or color (Black) in violation of Section 1981 by denying him the same terms and conditions of employment available to employees who are White, including but not limited to, subjecting him to disparate working conditions and unfair discipline, denying him terms and conditions of employment equal to that of employees who are White, and unlawfully terminating his employment.

15. Defendants have discriminated against Plaintiff on the basis of his race, and/or color (Black) in violation of Section 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment that has included, among other things, severe and pervasive discrimination and harassment committed against Plaintiff.

16. As a direct and proximate result of the Defendants' unlawful discriminatory conduct and harassment in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic harm, including but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of damages.

17. As a direct and proximate result of the Defendants' unlawful discriminatory conduct and harassment in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of damages.

18. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Sections 1981 for which Plaintiff is entitled to an award of punitive damages.

## Second Claim of Relief

### (Retaliation in Violation of Section 1981)

19. Plaintiff herby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs and statements as if fully set forth herein.

20. As a direct and proximate result of the Defendants' unlawful retaliatory conduct and harassment in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

21. As a direct and proximate result of the Defendants' unlawful retaliatory conduct and harassment in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

22. Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of Sections 1981 for which Plaintiff is entitled to an award of punitive damages.

## Third Claim of Relief

**(Discrimination and Harassment in Violation of Virginia Human Rights Act)**

23. Plaintiff herby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs and statements as if fully set forth herein.

24. Defendants have discriminated against Plaintiff on the basis of his race, and/or color (Black) in violation of Virginia Human Rights Act by denying him the same terms and conditions of employment available to employees who are White, including but not limited to, subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

25. Defendants have discriminated against Plaintiff on the basis of his race, and/or color (Black) in violation of Virginia Human Rights Act by denying him the equal terms and conditions of employment, including but not limited to subjecting him to disparate working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

26. Defendants have discriminated against Plaintiff on the basis of his race, and/or color (Black) in violation of Virginia Human Rights Act by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment that has included, among other things, severe and pervasive discrimination and harassment committed against Plaintiff.

27. As a direct and proximate result of the Defendants' unlawful discriminatory conduct and harassment in violation of Virginia Human Right Act, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

28. As a direct and proximate result of the Defendants' unlawful discriminatory conduct and harassment in violation of Virginia Human Rights Act, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## Fourth Claim of Relief

### (Retaliation in Violation of Virginia Human Rights Act)

29. Plaintiff herby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs and statements as if fully set forth herein.

30. As a direct and proximate result of the Defendants' unlawful retaliatory conduct and harassment in violation of Virginia Human Right Act, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

31. As a direct and proximate result of the Defendants' unlawful retaliatory conduct and harassment in violation of Virginia Human Rights Act, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## Fifth Claim of Relief

**(Title VII, 42 U.S.C. § 2000e-3(a)**

32. Plaintiff herby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs and statements as if fully set forth herein.

33. The Defendant retaliated against Plaintiff for engaging in a protected activity

34. As a direct and proximate result of the Defendants' unlawful retaliatory conduct and harassment in violation of Title VII, 42 U.S.C. § 2000e-3(a), Plaintiff has suffered and continues to suffer monetary and/or economic harm for which he is entitled to an award of monetary damages and other relief.

35. As a direct and proximate result of the Defendants' unlawful retaliatory conduct and harassment in violation of Title VII, 42 U.S.C. § 2000e-3(a), Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress, and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

After purchasing a BMW in September 2014, the Plaintiff, a Facility supervisor with Busch Gardens Williamsburg at the time was inappropriately hit on by a female assistant manager. The assistant manager made countless attempts to seduce the Plaintiff with sexual advances. The Plaintiff was also hit on by another female supervisor. After showing no interest in either assistant manager, the Plaintiff found that he was in a hostile work environment. Wanting only to make the sexual harassment stop, the Plaintiff contacted a manager and explained what was going on. At one point the assistant manager sexually harassed the Plaintiff in front of the Manager. As a result of the unwanted sexual advances not being appropriately handled, bigger issues took place essentially, a snowball effect was formed. The Plaintiff wrote up an employee that left and abandoned their shift at least 3 times to play in the park while on the clock. After the employee was fired, the manager gave the same assistant managers that made sexual advances towards the Plaintiff an order to write the Plaintiff up in retaliation. The Plaintiff went to human resources, where he met Angie Minter to make a complaint about the unfair treatment. After explaining the retaliation, the write up from the assistant managers disappeared however, harassment got worse and misconduct started deliberately be done in stealthy ways that could be covered up. Inappropriate racial comments and jokes where made in front of the Plaintiff. Comments such as "I thought all black people had big lips" where made. It was the Plaintiff's belief that management was trying to make the Plaintiff quit using a technique of natural attrition. On June 3rd 2015 the Plaintiff reported sexual harassment and other discrimination to Angie Minter in human resources. Angie gave Jackie, who was also a part of the discrimination complaint, the order to investigate. One of the two assistant managers that made sexual advances towards the Plaintiff was given an altered schedule for a few days as to not make contact with the Plaintiff while the investigation was taking place. On the night of

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

03/06/2019

B.      The Equal Employment Opportunity Commission *(check one)*:

☐        has not issued a Notice of Right to Sue letter.

☒        issued a Notice of Right to Sue letter, which I received on *(date)*    3/8/2019                 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐        60 days or more have elapsed.

☐        less than 60 days have elapsed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

WHEREFORE, Plaint prays that the Court enters judgment in his favor and againts Defendant, containing the following relief:

A. The Sum of $200,000000 to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress, and anxiety, emotional pain and suffering, emotional distress. physical injuries, Social withdrawl and dropping out of school.

B. An award of Punitive damages

C. An award of Backpay

D. An award of Frontpay

E. The Court to grant Plaintiff a jury trial.

F. The sum of $1,000 for actual damages.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        6/5/2019

Signature of Plaintiff

Printed Name of Plaintiff    Anthony Lonnie Forbes

### B.        For Attorneys

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Date of signing:  _____

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number                 _____

Name of Law Firm           _____

Street Address             _____

State and Zip Code          _____

Telephone Number           _____

E-mail Address             _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_Newport NEW_ DIVISION

Anthony Lonnie Forbes
_____
Plaintiff(s),

v.

Seaworld Entertainment INC and TheBlackstone Group L.P.
_____
Defendant(s).

Civil Action Number: 4:19-CV-56

## LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** Complaint .
                                                                 **(Title of Document)**

Anthony Lonnie Forbes
_____
Name of _Pro Se_ Party (Print or Type)

_[signature]_
_____
Signature of _Pro Se_ Party

Executed on: 6/5/2019 _____ (Date)

**OR**

**The following attorney(s) prepared or assisted me in preparation of** _____.
                                                                        **(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____ (Date)